**LORRAINE MFG. CO., Inc. v. LORAINE KNITWEAR CO., Inc.**

Civ. A. No. 3524.

United States District Court
N. D. Georgia, Atlanta Division.

Dec. 29, 1949.

Douglas H. Kenyon, J. Edward Shinn, Kenyon & Kenyon, of New York City, Robert B. Troutman, James M. Sibley, Spalding, Sibley, Troutman & Kelley of Atlanta, Ga., for complainant.

Dudley Cook, Alex McLennan of McLennan & Cook of Atlanta, Ga., for defendant.

RUSSELL, Circuit Judge. (sitting as N. S. District Judge designate).

In this proceeding the Lorraine Manufacturing Company, as complainant, and hereinafter referred to as such, seeks to enjoin the Loraine Knitwear Company, Inc., hereinafter referred to as defendant, from using the complainant's registered trade mark "Lorraine" or any mark so similar as is likely to cause confusion or mistake among purchasers, or to deceive purchasers as to the source or origin of its goods, and from using the defendant's corporate name or any name so similar as to likely cause confusion or mistake, or to deceive purchasers as to the source or origin of its goods. Complainant further prays for an accounting of damages and that the defendant be required to deliver up and destroy the alleged infringing and misleading labels, prints, packages, etc., bearing the name "Loraine," and/or the corporate name "Loraine Knitwear Company, Inc.," as well as any colorable imitation thereof.

The defendant denied the allegations of the complaint and asserted defenses alleging to disclose differences between the labels, and facts which would prevent any

deception or misleading of purchasers. It denied any bad faith and alleged the use of its trade mark for many years, which it claimed was adopted because of its being the first name of the wife and daughter of the owner of the business. The defendant denied knowledge of the complainant's trade mark prior to its use and adoption by it, and further plead that its goods were sold only in the Southeastern States which were wholly removed from the markets for the complainant's goods. It further plead that the word Lorraine in the trade name of complainant was merely geographical in its basic aspects and had not acquired any secondary meaning, and that the name was also that of many cities and towns in the United States, and was therefore a very weak trade name. As a final defense the defendant plead estoppel based upon the alleged acquiescence of the Vice-President of complainant, who in a conversation was alleged to have informed defendant's owner and President that he might disregard a notice given by the complainant's counsel to cease infringement.

The complaint is predicated upon the provisions of the Lanham Act, the Trade Name Act of 1946, 15 U.S.C.A. § 1051 et seq.

A hearing has been had, and following consideration of the evidence, and the briefs filed by the respective parties, the following facts are found and conclusions of law entered.

### Findings of Fact

Complainant is a corporation organized and existing under the laws of the State of Rhode Island, having its principal place of business and its mills at Pawtuckett, Rhode Island. Defendant is a Georgia corporation doing business in Atlanta, Georgia.

Complainant has been engaged in the manufacture of textile fabrics since 1882, and during the course of business has manufactured various types of fabrics including cotton, rayon, flannel, woolens, tweeds and blends. These fabrics are piece goods used in the manufacture of articles of clothing which it sells throughout the United States under the trade name mark "Lorraine," which has been used as a trade mark and in the corporate name of the complainant, since its organization. Complainant effected three registrations of its trade mark under the Trade Mark Act of 1905, 33 Stat. 724, and three under the Trade Mark Act of 1946. These registrations cover the use, under both Acts, of the name "Lorraine" on a large variety of fabrics in the piece, as well as the use of the mark in clothing, Class 39, United States Patent Office. The name and mark was first registered in 1915, the other registrations being in 1926, 1935 and 1948. In addition, complainant has obtained State registrations in the Southeast in Georgia, Louisiana, North Carolina and Tennessee in 1931; in Alabama in 1934, and in Florida in 1945.

Complainant has carefully identified its goods by its trade mark, whether they were sold in the piece to consumers or, as more recently done, to cutters and manufacturers, to cut and manufacture; and in all instances save one manufacturer, the manufacturer has placed on the various garments tailored from the complainant's fabrics a label, furnished by the complainant, which displays its trade mark in conjunction with that of the manufacturer of the garment. Complainant has retained control of the use of the label and required a high standard of workmanship in the garments in order to maintain the complete quality of the fabric and workmanship. If all types of sport garments are included, approximately twenty-five percent of complainant's manufacture has been and is devoted to sports wear use, and as appears from advertisements for the period of 1901 to 1905, even then the name "Lorraine" was advertised in connection with flannel yard goods for shirts and shirt waists. Especially in the Southeastern parts of the United States, the Lorraine name and trade mark was extensively used in connection with Seersucker suits, and up until 1942, suits of this material manufactured by Haspel Brothers of New Orleans and bearing the Haspel-Lorraine seersucker label, were extensively sold. In addition to suits, and bearing the complainant's label, there were

sold in this section other articles of apparel such as the Lorraine seersucker neck wear, beach robes, golfing and other sport dresses. In these instances, as well as in the case where a joint label of the complainant and the manufacturer were attached to the garment, the complainant's trade mark was prominently displayed and, while relating to the fabric of the garment, was nevertheless a distinctive part of the label and prominently displayed.

Complainant does an annual business of some ten million dollars per year, and according to the testimony has spent over a million dollars in advertising its products under the Lorraine name. Its current budget for advertising is approximately one hundred thousand dollars per year. Throughout the years the complainant's trade mark "Lorraine" as to a variety of fabrics has been extensively advertised in trade publications such as the Daily News Record and Women's Wear Daily, and by consumers advertisements in magazines such as the Saturday Evening Post, Time, Vogue, Vanity Fair and Mademoiselle. It is clear that the retail merchants consider the complainant's trade name well and favorably known because it is shown that numerous retail stores in their advertisements give prominence to the fact that their garment is made from the Lorraine fabrics. Summarizing, it may be stated that for many years prior to the recent war there has been continuous and extensive advertising of the complainant's name and fabrics in all the usual advertising mediums appealing both to the trade and to the consumer, and as a result of this, as well as the quality of the complainant's product, the name and mark is well and favorably known. In many instances the buyer for a retail store in ordering sport shirts from the manufacturer will specify that certain items are to be made from Lorraine fabrics. Many of the garments so advertised and sold to the consuming public are of the same identical class as those produced and labeled by the defendant. There is a marked similarity in appearance between the word Lorraine as used in the mark and labels of the complainant and as used in the labels of the defendant, the main differ-

ence being that the word contains only one "r" in the defendant's label, and in lieu of the reference to fabric in the complainant's label, the defendant's label contains in subordinate printing the words "sports wear" and also has in not clearly discernible letters the initials "LKC." The differences are not such as, in the ordinary course of purchase and trade, would be discernible to and differentiated by an ordinarily careful purchaser of the garments to which the respective marks are attached.

The defendant's business originated as a proprietorship of L. J. Steele, Jr., in 1937, doing business in the trade name of Loraine Knitwear Company. The business conducted was that of a jobber or distributor of sweaters, sport shirts, "T" shirts, swim wear and jackets, which were manufactured for him by others from materials which he purchased and delivered to such manufacturers for cutting, making and trim, his trade being confined to the Southeastern States. To these garments were attached the label as above stated. In November, 1946—counsel for complainant notified defendant of its claim that it was improperly using the name Loraine and asked discontinuance of such use. Mr. Steele contends he visited the office of the complainant in New York City and was told to go on back home and not worry about the matter. However, I am unable to find that, especially in view of the doubt which surrounds the testimony as to whether Mr. Steele was not mistaken in what office he visited, that under all of the circumstances this establishes any acquiescence. However this may be, he was again written in March, 1947, a letter which specifically refers to his failure to call by the attorney's office, as he had written that he would, and there was no reply to this letter. There is no evidence that the defendant affirmatively endeavored to palm off its goods as having any connection with the fabrics of the complainant, but it is clear that notwithstanding any direct attempt to do so, the use of the defendant's label on the garments in question, under the facts and circumstances shown in this case, constitutes such a reproduction and colorable imitation of the com-

plainant's registered trade mark as is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods.

Complainant has shown no instance of any purchaser being actually misled, and from the nature in which its evidence was detailed, it is assumed that no such instance could be shown. There would therefore be no basis for establishment of any damages already sustained which would be susceptible of proof, since the sales referred to in the record were to businesses, the buyers of which would not be misled.

## Conclusions of Law

This Court has jurisdiction of the parties and the subject matter.

It is conceded by the parties that this controversy is to be determined in the light of the provisions of the Trade Name Act of 1946, supra.

█ The use of the label as employed by the defendant constitutes an infringement of the valid, registered trade mark of the complainant, and the label of the defendant and the use of the name "Loraine" upon the garments sold by it and in its business is such as is likely to cause confusion or mistake or deceive purchasers as to the source or origin of the goods sold by the defendant.

Complainant is entitled to an injunction forbidding further infringement of its trade mark by the defendant, and to an order decreeing the destruction of all labels, marks, garment boxes, letter heads and advertising containing the infringing word, as prayed. Such destruction to be consummated within thirty days of the date of the final decree, and to be evidenced by the verified affidavit of the President of the defendant company. Complainant is further entitled to a decree enjoining the defendant from the use of the name "Loraine" in its corporate name.

█ Under the facts of this case, where no affirmative, intentional deception on the part of the defendant has been established, and where its sales, incidentally shown by the record, were to parties who could not have been misled because of their position as buyers or stores, and it appearing that it is unlikely that any profit arose to the defendant as the result of such infringement, or damage to the complainant therefrom which could be established with any definiteness, or that equity otherwise requires, the prayers of the complainant for an accounting should be denied.

The complainant is entitled to recover the costs of Court in this proceeding expended.

Proper decree for final entry may be presented after notice and approval between the parties as to form.